**Harriet ROGERS, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–1434.

United States Court of Veterans Appeals.

Argued March 25, 1992.

Decided May 21, 1992.

As Amended May 22, 1992.

James A. Mayhew, Baltimore, Md., for appellant.

Jacqueline M. Sims, with whom Robert E. Coy, Acting General Counsel, Barry M. Tapp, Asst. General Counsel, and Pamela L. Wood, Deputy Asst. General Counsel, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Associate Judges.

FARLEY, Associate Judge, filed the opinion of the Court, in which NEBEKER,

Chief Judge, joined. STEINBERG, Associate Judge, concurring, filed separately.

FARLEY, Associate Judge:

Appellant Harriet Rogers, the widow of serviceman Arthur Rogers, appeals the Board of Veterans' Appeals (BVA or Board) August 29, 1990, decision that her husband's discharge, was "under dishonorable conditions", thus making appellant ineligible for Dependency and Indemnity Compensation (DIC) benefits under 38 U.S.C. § 1310 (formerly § 410). The Court finds that the BVA's factual determination that the serviceman's discharge was "under dishonorable conditions" is supported by the evidence of record and therefore was not clearly erroneous. Accordingly, we affirm the BVA decision of August 29, 1990.

## FACTS AND PROCEDURAL HISTORY

Arthur Rogers (Rogers) entered the Army on December 31, 1969, and served in Vietnam from August 1, 1970, until his discharge on September 26, 1971. Rogers' enlistment medical evaluation of December 1969, with the exception of a notation of "pes planus" (flat-feet), R. at 121, reflects no abnormalities, and notes a "normal" psychiatric condition. R. at 120. His service record for approximately the first nine months indicates no disciplinary problems. R. at 21. He was subsequently charged with misconduct on three occasions: (1) October 9, 1970, violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886, being away without official leave for one day, and violation of Article 134, UCMJ, 10 U.S.C. § 934, wrongful possession of a habit-forming drug (barbiturates), R. at 1; (2) December 26, 1970, 12–day violation of Article 86, R. at 5; and (3) August 7, 1971, violation of Article 134, for the wrongful possession of heroin. R. at 9.

The first and second incidents resulted in non-judicial punishment under Article 15, UCMJ. R. at 2, 6. The charge of wrongful possession of heroin was referred for trial by a special court-martial authorized to adjudge a bad conduct discharge. R. at 12. On the advice of counsel that a court martial "could lead to a bad conduct or dishonorable discharge", R. at 16, Rogers executed a "Request for Discharge for the Good of the Service", acknowledging that, among other consequences, he "m[ight] be ineligible for many or all benefits administered by the Veterans' Administration [now the Department of Veterans Affairs (VA)]". *Id.* His request for a discharge for the good of the service was approved, and an "Undesirable Discharge Certificate (DD Form 258 A)" was issued on September 17, 1971. R. at 20. An August 24, 1971, discharge examination report notes a "[h]istory of heroine [sic] addiction—No present use", R. at 145, and indicates a "normal" psychiatric evaluation and "Normal Mental Status". R. at 144.

Pursuant to Rogers' claim for benefits in 1971, the Baltimore, Maryland Regional Office (RO) issued, on March 23, 1972, an "Administrative Decision" on the character of his discharge. The adjudicator determined that Rogers' discharge resulted from "willful and persistent misconduct", and consequently his discharge was "under conditions deemed to be dishonorable." R. at 24. (This determination is not final for purposes of appellant's claim for survivor benefits. *See* 38 C.F.R. § 19.196 (superseded by 57 Fed.Reg. 4126–27 (1992), to be codified at 38 C.F.R. § 20.1106 (1992)).

During 1972–74, Rogers was twice voluntarily hospitalized for substance abuse and diagnosed an alcoholic. R. at 107–10. Appellant reported that after her husband's discharge she noted "a drastic change in his behavior", R. at 74: he began drinking heavily, heard voices and became violent; later he suffered flashbacks. R. at 74, 75, 92. On September 25, 1985, after having jumped into the Inner Harbor in Baltimore, Maryland, Rogers died due to complications; his death was determined a suicide. R. at 30, 76.

On February 8, 1988, appellant filed for DIC benefits. R. at 26. The VA notified her that because of her husband's discharge under dishonorable conditions, she might not be entitled to benefits and to submit evidence in support of her claim. R. at 33. In reply, appellant requested a

hearing and a statement of the case "to present evidence regarding the character of discharge and to show the relationship between [her] husband's military service and subsequent death by suicide." R. at 46. On November 3, 1988, the DIC claim was denied on the basis that Rogers' discharge "was found to have been issued under conditions which constitute a bar to payment of VA benefits." R. at 48. Appellant appealed to the BVA, asserting, inter alia, that the "character" of her husband's service was of a higher quality than reflected in the discharge, and that during service he suffered from a psychiatric disorder. *See Harriet Rogers In re Arthur Rogers*, BVA 90–29665, at 2 (Aug. 29, 1990). Appellant submitted to the Board a psychiatric report by Dr. Milton Buschman. Based on an interview of appellant, Dr. Buschman indicated that Rogers' behavior, as described by his widow:

> appears consistent with that of a chronic post-traumatic [sic] stress disorder [PTSD]. Intertwined with the history, of course, is apparent poly-substance abuse, including heroin and alcohol. These substances certainly can both trigger paranoid and other psychiatric behavior in their own right, as well as exacerbate a [PTSD].

R. at 93.

In its decision of August 29, 1990, the Board noted that it lacked authority to change Rogers' discharge. "Rather our position is to determine whether or not the serviceman's discharge ... was issued under dishonorable conditions for [VA] purposes." *Rogers*, BVA No. 90–29665, at 5. The Board concluded that in view of Rogers' normal psychiatric examinations in service, the record did not support appellant's contentions that the serviceman was experiencing psychiatric problems while in service. Further, the Board stated:

> It is the opinion of the Board that [Rogers' three incidents of misconduct] indicate a pattern of willful and persistent misconduct [as defined by 38 C.F.R § 3.12(d)(4), such that] the serviceman's period of active service was terminated

by a discharge under dishonorable conditions.

*Id.*

Appellant filed a timely appeal to this Court. Oral argument was held on March 25, 1992. Appellant argued, inter alia, that the BVA erred in failing to apply the "benefit of the doubt" doctrine, under 38 U.S.C. § 5107(b) (formerly § 3007(b)) and 38 C.F.R. § 3.102 (1991).

### DISCUSSION

As the BVA indicated in its decision, the issue in this case is one of status, i.e., whether serviceman Arthur Rogers was a "veteran" as that term is defined by statute. A "veteran" is a person discharged or released from active service "under conditions other than dishonorable". 38 U.S.C. § 101(2) (1991). However, pursuant to 38 C.F.R. § 3.12(d),

> [a] discharge or release because of one of the following offenses is considered to have been issued under dishonorable conditions:
>
> .     .     .     .     .
>
> (4) Willful and persistent misconduct. This includes a discharge under other than honorable conditions, if it is determined that it was issued because of willful and persistent misconduct. A discharge because of a minor offense will not, however, be considered willful and persistent misconduct if service was otherwise honest, faithful and meritorious.

38 C.F.R. § 3.12(d)(4) (1991). The Board determined that Rogers was not a "veteran" because he was discharged under "dishonorable conditions". The Board found as a fact that Rogers' in-service conduct was "willful and persistent" and did not fall within the exception for "a discharge because of a minor offense" provided by § 3.12(d)(4).

"[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1991); 38 U.S.C.

§ 7261(a)(4) (formerly § 4061(a)(4)). This Court is unable to conclude that the Board erred in finding that Rogers was discharged under dishonorable conditions, thus making appellant ineligible for DIC benefits. Rogers' service record of two incidents of Article 15 reprimands and the charge of wrongful possession of heroin which led to the initiation of special court-martial proceedings and Rogers' subsequent request for discharge "for the good of the service", provide a plausible basis for the Board's finding. Moreover, the Board's determination that Rogers did not suffer from any psychiatric disabilities while in service is amply supported by his induction and discharge medical examinations, which indicate "normal" psychiatric evaluations.

 With respect to appellant's argument that she is entitled to the benefit of the doubt, as provided by 38 U.S.C. § 5107(b) and 38 C.F.R. § 3.102, we note that when dealing with a question of status, this Court has held in *Aguilar v. Derwinski*, 2 Vet.App. 21 (1991), that the person seeking to establish that status must prove it by a preponderance of the evidence. Therefore, the benefit of the doubt doctrine is not applicable here. *Cf. Bethea v. Derwinski*, 2 Vet.App. 252 (1992) (holding that the benefit of doubt rule does not apply in determining the facts upon which the Court's jurisdiction is based).

Upon consideration of the foregoing, the Board of Veterans' Appeals decision of August 29, 1990, is AFFIRMED.

STEINBERG, Associate Judge, concurring:

I concur in the opinion of the Court except for its unnecessary diversion to reiterate ill-advised conclusions stated in *Aguilar v. Derwinski*, 2 Vet.App. 21, 23 (1991). Just as was the case in *Aguilar*, the benefit of the doubt issue is not raised by the facts before the Court because the evidence so clearly preponderates against the claimant that it cannot reasonably be read as being in "equipoise" on any material issue. *See Gilbert v. Derwinski*, 1 Vet. App. 49, 55 (1990); *Aguilar*, 2 Vet.App. at

23–24 (concurring opinion). There is thus no reason to reach the issue of the benefit of the doubt in this case.