**Barbara A. LINSDAY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–563.

United States Court of Veterans Appeals.

July 3, 1996.

226

Linda S. Burns, Jasper, AL, was on the brief for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; David W. Engel,. Deputy Assistant General Counsel; and Ralph G. Davis, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

NEBEKER, Chief Judge:

The appellant, Barbara A. Linsday, appeals a March 28, 1994, Board of Veterans' Appeals (Board or BVA) decision finding her claim for death pension benefits not well grounded. After considering the record on appeal and the briefs of the parties, the Court will affirm the Board's decision for the following reasons.

## I. FACTS

The appellant's husband, Wayne Linsday, had active service in the U.S. Navy from January 1946 to August 1947, at which time he received a bad conduct discharge (BCD) because he had been absent without leave for a substantial period. Record (R.) at 33, 42. A service record showed that he was "[n]ot recommended for re-enlistment." R. at 41. He entered the U.S. Army in April 1952 and was discharged in December 1952 with an other than honorable (OTH) discharge. R. at 77, 93. Mr. Linsday died in August 1981. R. at 62. In 1983, the appellant inquired of a VA regional office (RO) whether she was entitled to burial benefits. R. at 30. The RO notified her that because of her husband's BCD, she would need to submit information regarding the character of his discharge. R. at 36, 37. At the same time, the RO requested Mr. Linsday's records from the National Personnel Records Center (NPRC). In response, the NPRC sent a copy of an April 1947 document outlining that the veteran had been convicted by a general court martial on April 8, 1947, for an almost three-month unauthorized absence after his leave had expired, sentenced to eight months' confinement, and discharged from the U.S. Navy with a BCD. R. at 42.

The appellant submitted another claim for burial benefits in February 1984. R. at 46, 47. The RO denied her claim because of the nature of Mr. Linsday's discharge from the Navy. R. at 55–56. In June 1990, the appellant submitted a claim for death pension benefits based on the appellant's eight months of service in the U.S. Army. R. at 58–66. On request, the NPRC sent the RO a

copy of a "Certification of Military Service" indicating that Mr. Linsday had received an OTH discharge from the U.S. Army on December 2, 1952. R. at 77–78. The RO notified the appellant that she needed to provide additional information as to the character of his service. R. at 80–85. The appellant responded that she did not know Mr. Linsday at the time of his discharge from the Army, but that she knew of no reason why he would have been discharged "dishonorably." R. at 87. Attached to her statement was a duplicate of an undated certificate signed by President Reagan, which states in its entirety: "The United States of America honors the memory of Wayne E. Linsday[.] This certificate is awarded by a grateful nation in recognition of devoted and selfless consecration to the service of our country in the Armed Forces of the United States." R. at 88.

In March 1991, the RO again requested that the NPRC provide Mr. Linsday's service records regarding his service in the Army. R. at 93. An April 28, 1991, notation on that request returned from the NPRC stated. "Reason for Other Than Honorable discharge is Misconduct. Facts [and] circumstances cannot be reconstructed. All records, if any, in our custody regarding this subject were lost in the fire in July 1973." R. at 93. In June 1991, the RO denied pension benefits, finding that Mr. Linsday's "period of service in the Army from April 10 to December 2, 1952, was dishonorable service." R. at 96–97. The appellant was also advised that she had "the right to file a request for revision of the character of the veteran's discharge with the Service Department Discharge Review Board or to apply for correction of the former service person's military records by the Service Department Board for Correction of Military Records." R. at 99. The RO enclosed the appropriate forms to make those requests with the letter. *Ibid.*

The appellant filed a Notice of Disagreement as to the RO's decision. R. at 104. In response to an additional request for information, the NPRC stated: "OTH Discharge—Fraudulent Entry into the Army. (Prior Navy service ending in BCD) Facts and Circumstances are not available. Prior report furnished on [April 28, 1991,] under the above [VA claims folder number]." R. at 116. In May 1991, the RO called the NPRC to ascertain the circumstances related to the OTH discharge and was informed that it was due to misconduct. *See* R. at 120.

In a written submission to the BVA in April 1992, the appellant's service representative argued that the record did not contain any evidence of misconduct but had instead shown that the facts and circumstances of this case could not be reconstructed, and argued that VA had failed to provide a complete record. R. at 143–44. In October 1992, the BVA remanded the appellant's case to the RO, noting that when the RO had requested information regarding Mr. Linsday's service in the Army, "his surname was misspelled and his Navy service number was used." R. at 147. The BVA directed the RO to contact the NPRC to obtain all documents regarding Mr. Linsday's second period of service and associate those documents with the claims folder and to request the NPRC to state its reasons for concluding that the serviceman was discharged from the Army due to misconduct. R. at 148. The RO was then "requested to again consider whether the character of the serviceman's discharge following his latter period of service is a bar to VA benefits." *Ibid.* On remand, the NPRC stated: "Documents not available [because of the 1973 fire]. Reason for Discharge: Fraudulent Entry into Army." R. at 152. The RO denied the appellant's claim for benefits because "[a]n undesirable discharge by reason of a fraudulent enlistment voids the enlistment from the beginning date." R. at 163–64. Another request for information was returned in April 1993 with the notation, "No record of fraudulent enlistment located." R. at 177. Two months later, NPRC responded: "Probably fraudulent entry, had bad conduct discharge from Navy. Army does not show reason for other than hon[orable] disch[arge]." R. at 182. The appellant submitted a statement in August 1993 urging the Board to grant her claim because VA could not prove that her husband's entry into the Army was fraudulent. R. at 185. The BVA decision now on appeal followed.

## II. ANALYSIS

■ The Secretary argues that the BVA decision that the appellant's claim was not well grounded should be affirmed because the appellant did not establish her status as a claimant or, in the alternative, if the appellant had reached claimant status, the decision should be affirmed because the claim was not well grounded. Brief (Br.) at 12, 15. The appellant argues that the BVA decision should be vacated and the matter remanded for the BVA to "explore different avenues for obtaining records that have been recovered or reconstructed since the 1973 fire," and for a plausible explanation to be given to the appellant for Mr. Linsday's discharge. Br. at 19.

■ A person who claims VA benefits has the "burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). "[T]he [VA] benefits system requires more than just an allegation; a claimant must submit supporting evidence. Furthermore, the evidence must 'justify a belief by a fair and impartial individual' that the claim is plausible." *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992) (quoting § 5107). The Court reviews the question of whether a claim is well grounded, which is a question of law, de novo. *See Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993); *Butts v. Brown,* 5 Vet.App. 532, 539 (1993) (en banc).

Both the current version of the statute and the one in effect when the appellant's husband entered the Army in 1952 generally prohibit the reenlistment of a person where his last term of enlistment was not honest and faithful. 10 U.S.C. § 508 (codified then at 10 U.S.C. §§ 622, 623, 624). However, reenlistment into the Army may be authorized by the Secretary. *Ibid.*

As the Board pointed out in its decision,

Although the statutes do provide for a waiver of that prohibition to enlistment, it is not contended that such a waiver was granted, and had such a waiver been granted, the service department would have been precluded from then discharging the serviceman based on that statutory prohibition.... It, therefore, appears that once the Army became aware of the serviceman's prior bad conduct discharge from the Navy, his enlistment was voided and he was provided an other than honorable discharge from service.

R. at 8. As the Board also recognized, the certificate from former President Reagan submitted by the appellant "provides no evidence concerning the character of [the appellant's] husband's discharge from either period of service." *Ibid; see also* 38 C.F.R. § 3.203 (1995) (regulation describes what type of evidence of service and character of discharge VA may accept for purpose of establishing entitlement to benefits). The BVA also acknowledged that in a May 1993 letter to her representative the appellant had stated the following:

[S]he had seen her husband's discharge and that "it was a good one," but that it was in her brother-in-law's possession and unavailable. Should this document become available, the appellant may apply to reopen her claim, but the VA has exhausted all avenues to obtain pertinent information in the numerous requests to the NPRC.

*Ibid.* (This May 1993 letter does not appear in the record on appeal.)

Under 10 U.S.C. § 508 and Army regulations, the appellant's husband was barred from reenlisting in the service absent a waiver, and there is no evidence that the appellant's husband ever obtained a waiver. Army Regulation No. 615–366, Section 1 (October 21, 1944) (attached to Secretary's Br. as exhibit 1). As the Board pointed out, the appellant had not even contended that that bar to reenlistment was waived. In fact, she has stated that she did not know her husband at the time of his discharge from the Army in 1952, and had no way of knowing the reason for his discharge. *See* R. at 87.

We agree with the Board that the appellant's claim was not well grounded because she did not have evidence demonstrating that the character of her deceased husband's discharge made her eligible for benefits. *See* 38 U.S.C. § 5107(a); *Edenfield v. Brown,* 8 Vet. App. 384, 389 (1995) (en banc) (person who files a claim for benefits with such evidence as he has is a claimant although the claim may not be well grounded). *But see Aguilar*

*v. Derwinski,* 2 Vet.App. 21 (1991) (before applying for benefits, person must demonstrate by preponderance of evidence qualifying service and character of discharge). The appellant has argued that VA has not proven her husband's entry into the Army was fraudulent, and therefore her claim should be granted. However, she has not carried her burden of submitting a well-grounded claim for death pension benefits because there is no service record evidence that her husband had the requisite character of service. *See Edenfield, supra; cf. West v. Brown,* 7 Vet. App. 329, 332 (1995) (en banc) (one element of a disability claim is veteran's status); *Aguilar,* 2 Vet.App. at 23.

■ Where a person has submitted a not-well-grounded claim, and VA is on notice that there likely exists evidence which, if true, would make the claim plausible, VA must advise the claimant that that evidence is needed to complete the application for benefits. 38 U.S.C. § 5103(a); *Robinette v. Brown,* 8 Vet.App. 69 (1995). In this case, the Secretary has complied with his § 5103(a) duty to inform the claimant. The Board has informed the appellant that should the document apparently referred to in the May 1993 letter relating to her husband's discharge "become available, the appellant may apply to reopen her claim." R. at 8. Moreover, the RO had informed the appellant that she would need to submit more information regarding her husband's discharge from the Army. *See* R. at 36–37, 80–85. She has responded that she did not know him at the time of his discharge. R. at 87. The RO also has informed her that she had the right to appeal to the "Service Department Discharge Review Board" or the "Service Department Board for Correction of Military Records" if she disagreed with the characterization of her husband's discharge. *See* R. at 99. Finally, VA has made numerous requests to the NPRC to obtain relevant information.

The Court also notes that, in her brief, the appellant "requests that a plausible explanation be afforded the appellant as to the reason for discharge based on the facts in evidence." Br. at 19. The appellant has been afforded a plausible explanation for her husband's OTH discharge from the Army in 1952: that is, he had previously received a BCD from the Navy and been sentenced by a general court martial; there is no evidence that a waiver of the statutory bar to reenlistment was granted. As the Board concluded, it is, therefore, plausible that he was discharged from the Army eight months after he enlisted with an OTH discharge because of his previous BCD from the Navy.

### III.  CONCLUSION

Accordingly, the Board's decision that the appellant's claim is not well grounded is AF-FIRMED. *See Edenfield,* 8 Vet.App. at 389.